UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Alan Bernstein ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:22-cv-1637-BHH |
| v. ) | |
| ) | **Opinion and Order** |
| Walmart, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon Defendant Walmart, Inc.'s motion for summary judgment. (ECF No. 25.) For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

**BACKGROUND**

This premise liability case arises out of an alleged trip and fall suffered by Plaintiff Alan Bernstein ("Bernstein") on July 25, 2019, within a few seconds of entering the retail store owned by Defendant Walmart, Inc. ("Walmart"), in Mt. Pleasant, South Carolina. Indeed, Bernstein fell inside the vestibule – the space between the outer door and inner door to the store – as he was making his way to the shopping carts on the lefthand side. Approximately ten feet in front of the shopping cart storage area was one stationary shopping cart and two or three customers standing and chatting nearby. The handle of the stationary shopping cart was facing these customers and was within a few feet of them. While Bernstein admitted he could have gone to his right, around the stationary shopping cart and few customers, he "went left directly to the carts" even though access on the left was tight. He testified that he "was trying to get through" a space that was

"[a]bout two and a half feet" wide, between an interior corner of the building (on the left) and the stationary shopping cart (on the right). (ECF No. 25-2 at 9.) In doing so, his right foot caught on the wheel of the stationary shopping cart, and he fell. In addition to the two or three customers present, there was one Walmart employee sitting on a stool in the vestibule, approximately ten feet from where Bernstein fell.

On January 28, 2022, Bernstein filed a complaint in the South Carolina Court of Common Pleas for Charleston County, alleging premises liability/negligence by Walmart. (ECF No. 1-1 at 2-5.) On May 23, 2022, Walmart timely removed the case to federal court under diversity jurisdiction and contemporaneously filed an answer to the complaint. (ECF Nos. 1 & 3.) On June 26, 2023, Walmart filed the instant motion for summary judgment. (ECF No. 25.) Bernstein filed a response in opposition, (ECF No. 26), and Walmart filed a reply. (ECF No. 27.) This matter is now ripe for the Court's consideration.

## **LEGAL STANDARD**

Summary judgment is appropriate when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The moving party has the burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant makes this showing, the opposing party must "go beyond the pleadings" to evince "specific facts showing . . . a genuine issue for trial." *Id.* at 324. A genuine issue of material fact—one "that might affect the outcome of the suit"—exists if, in viewing the

2

record and all reasonable inferences drawn in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex*, 477 U.S. at 322. "[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249 (citation omitted). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48.

The Court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id* at 251-52. The Court should not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (citation omitted). In ruling on a motion for summary judgment, the Court must not resolve disputed facts, weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995) (citation omitted), or make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Inferences "drawn from the underlying facts . . . must be viewed in the

3

light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## DISCUSSION

### A. Parties' Arguments

Walmart argues that the Court should grant summary judgment in its favor for three reasons. First, Walmart argues Bernstein has not established that the stationary shopping cart in the vestibule was a dangerous condition; rather, Walmart contends the stationary shopping cart was open and obvious and no exception to this defense applies. Second, Walmart argues Bernstein concedes Walmart did not create the alleged dangerous condition, and there is no evidence to establish Walmart had constructive notice of the stationary shopping cart. Third, Walmart argues it did not violate its policies applicable to shopping carts, thereby causing Plaintiff's fall.

Bernstein does not concede that the stationary shopping cart was an open and obvious hazard, but he argues that if it was, Walmart should have anticipated that their invitees may be distracted and should have taken reasonable action to prevent the harm posed by the "errant cart." Bernstein also argues, based on the testimony of a former 31-year employee of Walmart, Mary Bell Simmons, that errant carts are a dangerous condition. Lastly, Bernstein claims that Walmart recognizes errant carts as hazards in its policies and procedures. He states that Walmart's procedures require that errant shopping carts be cleared and stored in designated areas and, as such, Walmart failed to follow its "own SOP to remedy the hazard" that led to Bernstein's injuries.

4

### B. Premises Liability in South Carolina

In South Carolina, "[p]remises liability is a theory of negligence that establishes the duty owed to someone injured on a landowner's property as a result of conditions or activities on the land." *Callum v. CVS Health Corp.*, 137 F. Supp. 817, 858 (D.S.C. 2015) (citation omitted). In order to establish a negligence cause of action under South Carolina law, a plaintiff must present evidence of: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages sustained by the plaintiff. *Andrade v. Johnson*, 588 S.E.2d 588, 592 (S.C. 2003) (citation omitted).

"The existence of a duty owed is a question of law" for the Court to determine. *Houck v. State Farm Fire & Cas. Ins. Co.*, 620 S.E.2d 326, 329 (S.C. 2005) (citations omitted). "[I]f no duty exists, the defendant is entitled to judgment as a matter of law." *Id.* "If a duty does exist, the jury then determines whether a breach of the duty that resulted in damages occurred." *Nelson v. Piggly Wiggly Cent., Inc.*, 701 S.E.2d 776, 781 (S.C. Ct. App. 2010) (citation omitted). "Generally, there is no common law duty to act." *Jensen v. Anderson Cnty. Dep't of Soc. Servs.*, 403 S.E.2d 615, 617 (S.C. 1991). However, an affirmative duty "may be created by statute, contract relationship, status, property interest, or some other special circumstance." *Id.* "South Carolina recognizes four general classifications of persons who come on premises:" (1) adult trespassers; (2) invitees; (3) licensees; and (4) children. *Sims v. Giles*, 541 S.E.2d 857, 861 (S.C. Ct. App. 2001). "Different standards of care apply depending on whether the visitor is considered an 'invitee,' i.e., an invited (express or implied) business guest; a 'licensee,' i.e., a person not invited, but whose presence is suffered; a 'trespasser,' i.e., a person whose presence

5

is neither invited nor suffered; or a child." *Id.* (citation omitted). "In premises liability cases, the invitee is offered the utmost duty of care by the landowner and a trespasser is generally offered the least." *Id.*

In the case at hand, the parties do not dispute Bernstein's status as an invitee while he shopped at Walmart's store. "Invitees include patrons of stores . . . ." *Sims*, 541 S.E.2d at 862. "'An invitee is a person who enters onto the property of another by express or implied invitation, his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land, and there is a mutuality of benefit or a benefit to the owner.'" *Callum v. CVS Health Corp.*, 137 F. Supp. 817, 858-59 (D.S.C. 2015) (quoting *Lane v. Gilbert Const. Co.*, 681 S.E.2d 879, 882 (S.C. 2009)). "'[A]n invitee enters the premises with the implied assurance of preparation and reasonable care for his protection and safety while he is there.'" *Id.* at 859 (alteration in original) (quoting *Singleton v. Sherer*, 659 S.E.2d 196, 205 (S.C. Ct. App. 2008)).

"A merchant is not an insurer of the safety of [its] customers[,]" and "is not required to maintain the premises in such condition that no accident could happen to a patron using them[,]" *Garvin v. Bi-Lo, Inc.*, 541 S.E.2d 831, 832, 833 n.1 (S.C. 2001) (citations omitted); however, a merchant owes "an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety, and is liable for injuries resulting from the breach of such duty." *Sims*, 541 S.E.2d at 863 (citation omitted). The owner has a duty to warn an invitee only of latent or hidden dangers of which the landowner is on actual or constructive notice. *H.P. Larimore v. Carolina Power & Light*, 531 S.E.2d 535, 538 (S.C. Ct. App. 2000) (citing *Callander*, 406 S.E.2d at 362-63). "To recover damages for injuries caused by a dangerous condition on a storekeeper's premises, the plaintiff must show

6

either (1) that the injury was caused by a specific act of the [defendant] which created the dangerous condition; or (2) that the [defendant] had actual or constructive knowledge of the dangerous condition and failed to remedy it." *Garvin*, 541 S.E.2d at 832. Either theory is predicated on the existence of a dangerous condition; if there is no evidence of a dangerous condition, then the Court must grant summary judgment. *Daniels v. Food Lion, LLC*, No. 5:16-cv-00936-RBH, 2018 WL 5762081, at *6 (D.S.C. Nov. 2, 2018).

"The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable." *H.P. Larimore,* 531 S.E.2d at 540. A landowner is not liable for open and obvious dangers unless the landowner "should anticipate the harm despite such knowledge or obviousness" or "has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, . . . or fail to protect himself against it." *Callander*, 406 S.E.2d at 362-63 (internal quotation marks omitted) (alteration in original).

### C. Analysis

For a plaintiff to prove his claim for premises liability negligence, he must establish the existence of a defective or dangerous condition. Here, the evidence presented by the parties establishes that the one stationary cart in the vestibule was reasonably apparent to one exercising due care for his own safety.

Bernstein testified that he observed the one stationary shopping cart prior to his fall and, while he could have gone around it and the few customers standing nearby, he chose to squeeze through the opening between the interior wall and the stationary shopping cart to get to the remaining shopping carts. Thus, the stationary shopping cart

7

was obvious to Bernstein and, based on his decision to walk next to it – through a small opening no less – to retrieve a shopping cart, must have not been visibly dangerous.

Bernstein cannot merely offer his testimony of his belief of the stationary shopping cart's dangerousness to support a finding that the shopping cart was in fact a hazard. (ECF No. 25-2 at 8 (testifying that the stationary shopping cart was dangerous to him because he tripped on it)). Instead, he must offer facts, support by the evidence in this case, as to the dangerousness of the stationary shopping cart on the day of his accident. Bernstein has failed to do this, however, as he attempts to persuade the Court to hold that the stationary shopping cart was hazardous simply based on its alleged presence ten feet in front of where it is customarily found and within just a few feet of customers standing nearby.

As for the cited testimony of former employee, Ms. Simmons, who has no personal knowledge of Bernstein's accident, the Court finds it falls short of establishing a genuine dispute of material fact as to whether a hazardous condition existed the day of his accident. She testified that if she saw shopping carts scattered around, she would move them, and that she would move a shopping cart in the middle of the walkway coming in, in part, to keep customers safe and from falling. (ECF No. 26-2 at 6, 10.) Viewed in a light most favorable to Bernstein, a jury could not infer from Ms. Simmons' testimony that one stationary shopping cart in front of the storage cart area and within just a few feet of two or three customers is a dangerous condition. No evidence has been presented that Walmart placed the shopping cart there, that the shopping cart did not belong to a customer standing nearby, or how long the shopping was there prior to Bernstein's fall.

In all, there is simply no evidence in the record that would support a finding that Walmart owed a duty to warn Bernstein about the presence of this stationary shopping cart because the only evidence in the record refutes Bernstein's theory that the presence of the stationary shopping cart was an unreasonably dangerous hazard that was hidden and concealed. In fact, Bernstein's own testimony establishes that the complained-of condition was open and obvious to a reasonably prudent person exercising reasonable care in the circumstances. He testified that he was not distracted when he entered the store but was focused on a getting a cart. (ECF No. 25-2 at 4.) He testified that he had a clear line of sight to see the few customers standing in the vestibule and the one Walmart employee sitting on a stool in the vestibule. (*Id.* at 5.) Significantly, he testified that **he saw** the "errant cart" before he encountered it and that he made the decision to "g[o] through" a tight space of about three feet between the "errant cart" and the interior corner of the building. (*Id.* at 10-11.) Bernstein acknowledged that he could have avoided the "errant cart" altogether by walking around it but testified that he chose to go through the tight space because it was the most direct way to the shopping carts. (*Id.* at 11.) Thus, the Court finds that Walmart had no duty to warn in light of: Bernstein's knowledge that shopping carts would be in the vestibule; his specific knowledge of the alleged hazardous object, the "errant cart," prior to tripping over it; the focus he says he had on getting a shopping cart; and his decision not to walk around but to "try[] to get through" the "tight" space next to the stationary shopping cart.[1] (ECF No. 25-2 at 9.) Accordingly, the Court

---

[1] The Court further notes that, even if applicable here, Walmart's Standard Operating Procedure ("SOP") relating to Slip, Trip and Fall Guidelines does not establish a duty for purposes of a negligence claim. *Pacicca v. Jackson*, No. 3:21-CV-03136-DCC, 2023 WL 8242180, at *3 (D.S.C. Nov. 28, 2023). Thus, while a failure to follow company internal policies "may be evidence of a breach of a standard of care," South Carolina law is clear that Walmart's alleged failure to comply with its SOP does not create a duty towards Bernstein. *Id.*

agrees with Walmart that Bernstein has not presented evidence of a dangerous condition to survive summary judgment on his claim for premises liability negligence.[2]

## CONCLUSION

Accordingly, the Court grants Defendant's motion for summary judgment. (ECF No. 25.)

**IT IS SO ORDERED.**

                                                         /s/ Bruce Howe Hendricks
                                                         United States District Judge

February 7, 2024
Charleston, South Carolina

---

[2] As this Court finds that Bernstein cannot establish the existence of a dangerous condition, it is unnecessary to address the parties' remaining arguments.